IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARITZA MATOS, § | |
|    PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:18-CV-02591-M-BK |
| § | |
| AT&T CORPORATION, DEBBIE § | |
| GARETT, AND JANE DOE, § | |
|    DEFENDANTS. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), this case has been referred to the undersigned United States magistrate judge for pretrial management. Pending before the Court is Defendant AT&T Corporation's *Motion to Compel Arbitration and Stay All Proceedings*. Doc. 27. For the reasons that follow, the motion to compel arbitration should be **GRANTED**, the motion to stay proceedings should be **DENIED**, the parties should be **ORDERED** to arbitrate this action in accordance with the terms and provisions of the arbitration agreement, and this action should be **DISMISSED WITH PREJUDICE**.

### I.   BACKGROUND

Plaintiff, a former employee of Defendant AT&T Mobility Services, LLC[1] ("AT&T"), filed her *pro se Complaint* in the United States District Court for the Southern District of New York, alleging that AT&T and its employees, Defendants Debbie Garett ("Garett") and Jane Doe, discriminated against her in violation of Title VII of the Civil Rights Act of 1964 and 42

---

[1] Matos apparently named "AT&T Corporation" as the Defendant in error. Her former employer and the proper defendant in this case is AT&T Mobility Services. Doc. 27 at 6.

U.S.C. § 1981 based on Plaintiff's race and national origin. Doc. 2 at 3-4. Plaintiff also alleges that Defendants' alleged discrimination violated New York state and city civil rights laws. The case was transferred to the Northern District of Texas, Dallas Division, Doc. 4, where AT&T and Garett filed a joint answer. AT&T now moves to compel arbitration and stay this action pending the outcome. Doc. 27.

### A. Relevant Facts

Plaintiff alleges that she was employed by AT&T from 2003 until 2015. Doc. 2 at 6-8. She enjoyed generally good relations with her employer until 2012, when AT&T transferred her to a position in which she reported remotely to Garett in Bellaire, Texas, and after which she began experiencing the discriminatory conduct which led to the instant complaint. Doc. 2 at 6-8.

On November 30, 2011, AT&T sent an email to Plaintiff, via AT&T's internal server, informing her that it was beginning an arbitration agreement program for employees (the "Agreement"). Doc. 28 at 26 (Decl. of Jeremy Dunlap). Over a 60-day period, AT&T sent the same email with the subject header "Action Required: Arbitration Agreement" to approximately 103,906 internal addresses advising the users of the program's creation. Doc. 28 at 25 (Decl. of Jeremy Dunlap). The email stated that entering into the Agreement was entirely voluntary and "there would be no adverse consequences for anyone opting out" of the Agreement, but anyone who chose to opt out must do so by February 6, 2011. Doc. 28 at 10 (Decl. of Kathleen Matyola, Ex. 1). The email also stated that anyone who did not opt out of the Agreement before February 6, 2011 would be subject to its terms. Doc. 28 at 10 (Decl. of Kathleen Matyola, Ex. 1). In addition, the email included a link to view the Agreement and language and encouraged users to do so. Doc. 28 at 10 (Decl. of Kathleen Matyola, Ex. 1).

When AT&T sent the email to Plaintiff, her email account sent an automatic "out of office" reply, Doc. 28 at 48 (Decl. of Susan Bounds, Ex. 1), but according to AT&T's records, someone subsequently (1) accessed the Agreement within the 60 day opt-out window using Plaintiff's unique login name and password for her email account, (2) followed the attached link to the Agreement, and (3) acknowledged reviewing the Agreement by clicking a "review completed" button, which was registered by AT&T's internal system. Doc. 28 at 26 (Decl. of Jeremy Dunlap & Exs. 2, 4-5). AT&T's records further indicate that Plaintiff did not opt out of the Agreement. Doc. 28 at 50 (Decl. of Hilda Ramirez).

On February 7, 2012, the Agreement went into effect. Doc. 28 at 83 (Decl. of Kathleen Matyola, Ex.1). In 2015, Plaintiff was fired from her job and filed a complaint with the EEOC, which issued her a right to sue letter in April 2018. Doc. 2 at 6-8, 11.

### B. Issues Presented

By the instant motion, AT&T asserts that suit in federal court is not appropriate because the Agreement is governed by the Federal Arbitration Act ("FAA"), which provides that "any dispute to which the Agreement applies" will be resolved in "final and binding arbitration instead of court litigation." Doc. 27 at 6 (alterations omitted). Plaintiff did not file a response, but instead sent a one-page letter to the court stating that she did "not recall signing or willing to go for arbitration as an alternative process to resolve this dispute but before a Judge-Magistrate." Doc. 36. She also argues that the "claimed arbitration agreement is not proven signed by [Plaintiff]," nor did it give [her] a notice that [she] was waiving [her] rights to take [her] case to a Federal court based on Title VII of the Civil Rights Act of 1964." *Id.*

3

AT&T replies that not only is Plaintiff's unsworn letter inadmissible as opposition to the motion to compel, but that Plaintiff's lack of knowledge and notice are insufficient to raise a triable issue of fact. Doc. 37.

## II.   APPLICABLE LAW

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). The FAA provides, in part:

> A written provision in any… contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Consequently, once a court finds an agreement to arbitrate between the parties, the court is restricted to enforcing the agreement. *See AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986).

The "fundamental principle [of] arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (*quoting Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). Thus, courts apply ordinary state law contract principles when evaluating arbitration agreements. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). In this case, Texas contract law applies because the Agreement specifies, *inter alia*, that the applicable law is that of the state in which the claim arose, i.e., where Plaintiff was terminated and where all Defendants are located. Doc. 28 at 14.

Arbitration agreements, like other contracts, are subject to contract defenses such as fraud, duress, or unconscionability. *Jackson*, 561 U.S. at 68. However, "[c]laims of lack of

4

sophistication, lack of explanation, and lack of time to review a contract containing a conspicuous and unambiguous arbitration provision do not trump the strongly favored status of arbitration under the FAA." *In re MHI P'ship, Ltd.*, 14-07-00851-CV, 2008 WL 2262157, at *5 (Tex. App.—Hous. [14th Dist.] May 29, 2008).  Under the FAA, a written arbitration agreement is *prima facie* valid and must be enforced unless the party opposing arbitration alleges and proves that the arbitration clause was a product of fraud, coercion, or any other legal or equitable grounds sufficient to revoke the contract.  *Freudensprung v. Offshore Tech. Servs. Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) (citation omitted).

In determining the merit of a motion to compel arbitration, the court considers (1) whether there is a valid agreement among the parties to arbitrate disputes, and (2) whether the dispute falls within the scope of the agreement.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Carey*, 669 F.3d at 205.  When conducting this two-step inquiry, district courts within the Fifth Circuit have applied a summary judgment-like standard that "giv[es] deference to the claims of the non-movant."  *Jackson v. Royal Caribbean Cruises, Ltd.*, __Fed. Supp. 3d.__, No. 3:18-CV-1699-S-BH, 2019 WL 1296348, at *6 (N.D. Tex. Mar. 21, 2019) (Scholer, J.) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. CIVA 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010)); *see also Royal Caribbean*, 2019 WL 1296348, at n.6  (collecting circuit court cases).  Such standard is deemed appropriate because an order "compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Id.* at *6 (internal alterations omitted); *Grant v. House of Blues New Orleans Rest. Corp.*, No. 10-3161, 2011 WL 1596207, at *3 (E.D. La. Apr. 27, 2007) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's, Inc.*, 584 F.3d 513, 528, 532 (3rd Cir. 2009)).  Under the standard, "[o]nly when there is no genuine

issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Royal Caribbean*, 2019 WL 1296348, at *7 (quoting *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 106 (3d Cir. 2000)).

To prevail, the moving party must first prove that there is a valid and enforceable agreement to arbitrate. *See Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 4119994, at *1 (N.D. Tex. Aug. 17, 2012), *adopted by* 2012 WL 4169164 (N.D. Tex. Sept. 17, 2012) (O'Connor, J.). If the movant successfully meets this burden, the non-movant must raise a genuine dispute of material fact regarding the existence of an agreement to arbitrate in order to defeat the motion to compel. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Which facts are material will be determined by the substantive law at issue in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the court finds in favor of arbitration, the FAA provides for a stay pending arbitration. 9 U.S.C. § 3. A court, however, may dismiss the action with prejudice, rather than stay it, when all claims are subject to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). Indeed, the court may even do so *sua sponte*. *See ECI Software Soln., Inc. v. Sheridan*, No. 3:18-CV-0511-N, 2018 WL 6523302, at *6 (N.D. Tex. Dec. 11, 2018) (Godbey, J.) (citing *Vican, Inc. v. Incipio Techs., Inc.*, No. 3:15-CV-2720-L, 2016 WL 687155, at *1 (N.D. Tex. Feb. 19, 2016) (Lindsay, J.)). The rationale for permitting dismissal with prejudice is because "[a]ny post-arbitration remedies sought by the parties will not entail renewed

consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Alford*, 975 F.2d at 1164; *see also Vican*, 2016 WL 687155, at *1 (declining to retain jurisdiction and dismissing action with prejudice when all claims were subject to arbitration under the FAA).

**III.   ANALYSIS**

Here, AT&T has clearly met its burden to compel arbitration. As set forth herein, AT&T has presented sufficient evidence to establish that there is no disputed material fact regarding (1) the validity of the arbitration clause or (2) its applicability in this case.

*A. Validity of the Agreement*

The evidence establishes that AT&T and Plaintiff entered into a valid and binding agreement to arbitrate her claims when Plaintiff failed to opt out of the Agreement by February 6, 2012. Under Texas law, an employer seeking to enforce an FAA-governed arbitration agreement with an at-will employee must prove that (1) the employee was given notice of the arbitration agreement, and (2) the employee accepted the agreement. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 203 (5th Cir. 2016); *see also In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002).

Here, there is no genuine material issue of fact as to whether Plaintiff was given notice of the arbitration clause in the Agreement. *Tinder*, 305 F.3d at 735. The email successfully reached her inbox as evidenced by the fact that her email sent back an "out of office" reply. Doc. 28 at 48 (Decl. of Susan Bounds, Ex. 1). AT&T's server subsequently received a notification from Plaintiff's unique login and password that she had opened and reviewed the Agreement. Doc. 28 at 26 (Decl. of Jeremy Dunlap & Exs. 2, 4-5). Plaintiff does not point to

proof in the record that she did not receive the email, and her claim of faulty recollection is not sufficient to overcome the only competent evidence to the contrary.[2]

Moreover, the competent evidence also establishes that Plaintiff accepted the terms of the Agreement by failing to opt out.  Plaintiff's unsworn averments in her letter to the Court that she does not remember signing the Agreement and that, if she did sign it, she did not understand the rights she was waiving, cannot overcome the strongly favored status of arbitration under the FAA.  *In re MHI P'ship, Ltd.*, 2008 WL 2262157, at *5; *Galan v. AT&T*, Case No. 1:17-CV-984-SS, Dkt. 26 (W.D. Tex. March 20, 2018) (holding that the plaintiff was bound by the identical AT&T Agreement even though he thought he had opted out and, alternatively, did not sign or consent to the Agreement).

### B. *Applicability of the Agreement*

There also is no material issue of fact regarding the applicability of the Agreement to Plaintiff's causes of action against AT&T, as, by its terms, the Agreement covers claims  "arising out of or related to [employees'] employment or termination of employment with [AT&T] and any other disputes regarding the employment relationship . . . compensation… termination . . . retaliation, discrimination or harassment."  Doc. 28 at 12-13 (Decl. of Kathleen Matyola, Ex. 2).  Indeed, contrary to Plaintiff's assertion, Doc. 36, the Agreement also covers "claims arising under the . . . Civil Rights Act of 1964."  Doc. 28 at 13 (Decl. of Kathleen Matyola, Ex. 2).

AT&T also correctly states that the Agreement applies to Plaintiff's claims against Garret, who is a direct beneficiary thereof.  Doc. 27 at 13, 14; *see* Doc. 28 at 33 (Agreement

---

[2] As AT&T correctly asserts, Plaintiff's letter is not competent evidence under the summary judgment standard applied here. *See Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) ("Although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, [the Court of Appeals for the Fifth Circuit has] never allowed such litigants to oppose summary judgments by the use of unsworn materials.").

provision stating that "[t]his agreement applies to any claim that you may have against any of [AT&T's] . . . present or former officers, directors, employees or agents in their capacity as such or otherwise."). *See also Lucchese Boot Co. v. Rodriguez*, 473 S.W.3d 373, 384 (Tex. App.—El Paso 2015) (holding that the plaintiff's co-workers were entitled to enforce arbitration agreement as third-party beneficiaries where the arbitration agreement stated that it applied to claims "against the Company or its officers, directors, shareholders, employees, or agents in their personal or official capacities").

Finally, as all of the claims raised by Plaintiff are subject to arbitration under the Agreement, there is no basis for the Court to stay this action. *Alford*, 975 F.2d at 1164; *Vican*, 2016 WL 687155, at *1.

**IV.   CONCLUSION**

For the reasons stated above, AT&T's *Motion to Compel Arbitration*, Doc. 27, should be **GRANTED** to the extent stated herein—the parties should be **ORDERED** to arbitrate this action in accordance with the terms of the Agreement, AT&T's motion to stay should be **DENIED**, and this civil action should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on September 9, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).